9 P.3d 1244

**Sondra OLSON, Plaintiff–Appellant,**

v.

**EG&G IDAHO, INC., and Constance C. Blackwood, Defendants– Respondents.**

**No. 23611.**

Supreme Court of Idaho, Rexburg, May 2000 Term.

Sept. 7, 2000.

Stephen A. Meikle, Idaho Falls, for appellant.

Pike & Shurtliff, Idaho Falls, for respondents. Edward W. Pike argued.

KIDWELL, Justice.

In this employment discrimination case, the appellant was terminated for "poor performance" and "no indication of willing[ness] to improve." The appellant claimed that the allegations were false and that the employer was discriminating against her. Prior to trial, the district court granted summary judgment to the employer on many of the appellant's claims. Following a jury trial on the remaining claims, the district court granted judgment notwithstanding the verdict (j.n.o.v.) on the claims in which the jury found for the appellant. The decision of the district court is affirmed.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In June of 1975, Sondra Olson began working for Aero Jet Company at the Idaho National Engineering Laboratory (INEL) (now INEEL). In 1976, when Aero Jet was replaced by EG&G Idaho, Olsen was employed as a project control representative. Thirteen years later, Olson was promoted to EG&G's Academic Programs Office (APO). In this

position, Olson was responsible for the fellowship research program of the Associated Western Universities (AWU). The AWU, a consortium of 50 universities, was under contract with the U.S. Department of Energy. The AWU was responsible for recruiting university students, usually at the under-graduate level, for summer jobs. When applications were received, Olson would pair the students with appropriate mentor engineers who requested assistance for research projects. Olson also coordinated student security clearances and assisted students with finding accommodations during the summer. Between 1989 and 1993, the APO grew significantly, as did Olson's responsibilities for the AWU program. During this time of growth, Olson was rated good to excellent on the performance of her responsibilities.

In March of 1993, the Department of Energy gave EG & G Idaho a negative performance evaluation during a semi-annual review. Also in March of 1993, respondent Constance C. Blackwood was appointed manager of the APO as well as Olson's supervisor. Soon after becoming Olson's supervisor, Blackwood began to require Olson to perform specific tasks in limited amounts of time. On March 22, 1993, Blackwood directed Olson to input 700–800 AWU applications and to develop an acknowledgement letter all in the same day. Olson testified that Blackwood gave her similar directives that were not possible to accomplish in the time allotted.

Blackwood testified that after being appointed manager of the APO, she began receiving phone calls about Olson's performance. Blackwood noted that Olson had not submitted several weekly reports to the Department of Energy. She further stated that although she had met with Olson on several occasions to remedy Olson's poor performance, Olson had not been responsive to her suggestions.

On May 7, 1993, Blackwood met with the Women's Program Manager, Arantza Zabala, to discuss Olson's performance. Sherree Schell of EG&G Idaho's Human Resource Office was also at the meeting. During the meeting, it was determined that a corrective action plan would be implemented to educate Olson on her deficiencies and to determine whether Olson was capable of adequately performing the job. Blackwood showed the plan to Olson on July 9, 1993. Thereafter Olson and Blackwood met every Friday to discuss Olson's performance under the plan. Blackwood testified that during these meetings Olson was unresponsive to Blackwood's suggestions. Olson described the meetings as extremely unpleasant and uncomfortable.

On August 12, 1993, Blackwood terminated Olson as an EG&G Idaho employee because Olson had failed to comply with the corrective action plan in a satisfactory manner. After being informed of the termination, Olson returned to her work station where she was met by armed security guards. The security guards escorted Olson to her car with her belongings, consisting of a refrigerator and several boxes of personal items.

Olson testified that following her termination she suffered from anxiety attacks and depression. Olson stated that she constantly worried about what her fellow employees at EG&G Idaho were thinking about her being escorted by armed security guards. Olson's psychiatrist testified that Olson required medication to control depression and that without medication Olson had a 90% chance of relapsing into depression.

On December 28, 1993, Olson filed a complaint against EG&G Idaho, Blackwood, and John Does I–X, alleging wrongful discharge, defamation, self-defamation and emotional distress. Olson made her first motion to amend her complaint on June 21, 1994, seeking to add claims for violation of privacy and violation of civil rights. Following the EEOC's notice of right to sue, Olson filed a second amended complaint on December 15, 1994, adding age and disability discrimination claims as well as a claim under the False Claims Act (31 U.S.C. § 3729).

On January 20, 1995, EG&G Idaho and Blackwood (respondents) moved to dismiss portions of Olson's second amended complaint. On August 10, 1995, the district court dismissed John Does I–X and Olson's False Claims Act claim. Olson filed her third amended complaint on August 30, 1995. On

February 13, 1996, she moved to amend her complaint a fourth time, this time adding another False Claims Act claim as well as breach of contract and equal protection claims. Also on February 13, 1996, respondents filed for summary judgment on all claims.

In an order dated April 9, 1996, the district court granted respondents summary judgment on Olson's claims for wrongful termination, self-defamation, negligent infliction of emotional distress, violation of privacy, violation of due process/civil rights (42 U.S.C. § 1983), and age and disability discrimination under the Idaho Human Rights Act. The court denied the motion as to defamation and intentional infliction of emotional distress. The court also denied the motion to dismiss Blackwood as a party defendant. On April 18, 1996, Olson moved for reconsideration, however the district court denied her motion.

Olson moved to amend her complaint for a sixth time on August 8, 1996. The district court denied Olson's sixth amended complaint but allowed her to file a seventh amended complaint to provide more specific and definite allegations than those contained in the sixth. On August 28, 1996, Olson filed a motion to amend her seventh amended complaint to add a claim under the False Claims Act and to add EG&G, Inc., the parent corporation of EG&G Idaho, as a party.

On September 19, 1996, respondents moved to dismiss EG&G, Inc. as a party and to dismiss Olson's False Claims Act claim. The district court granted respondents' motions, denied Olson leave to amend her seventh amended complaint to add EG & G, Inc. and dismissed Olson's False Claims Act claim.

A jury trial began on December 3, 1996. At the close of Olson's case, respondents moved for a directed verdict on all claims. The district court granted the motion as to the claim of intentional infliction of emotional distress against Blackwood, but denied the motion as to the remainder of Olson's claims. On December 18, 1996, the jury began deliberations. During deliberations the jury sent out a note concerning jury instruction number 15, intentional infliction of emotional dis-

tress. Over Olson's objection, the district court modified the instruction to include examples from cases where courts had found intentional infliction of extreme emotional distress.

The jury entered special verdicts on December 19, 1996. The jury found that Olson had established a case of defamation against Blackwood, but not against EG&G Idaho. The jury also found that Olson had not proven her case of intentional infliction of emotional distress against EG&G Idaho. Following the jury's special verdicts, the parties made opposing motions for j.n.o.v. The district court granted Blackwood's motion and denied Olson's. On February 3, 1996, Olson filed a timely notice of appeal.

## II.

## ANALYSIS

### A. The District Court Did Not Err In Granting Blackwood's Motion For J.N.O.V. On Olson's Defamation Claim.

■ The district court granted Blackwood's motion because it found there was not enough evidence that Blackwood acted with malice. On appeal, Olson claims that the district court erred because it ruled contrary to its ruling on Blackwood's motion for a directed verdict following the close of Olson's case. Alternatively, Olson argues that the jury was presented with substantial evidence of Blackwood's malice.

■ In reviewing a decision to grant or deny a motion for j.n.o.v., or a directed verdict, this Court applies the same standard as that applied by the trial court when originally ruling on the motion. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). When a court reviews a motion for j.n.o.v. under I.R.C.P. 50(b), the motion is treated as a delayed motion for a directed verdict and the same standard is applied for both. *Quick*, 111 Idaho at 763, 727 P.2d at 1191. When ruling on a motion for j.n.o.v., the trial court must determine whether there is substantial evidence to support the jury's verdict. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 495, 943 P.2d 912, 921 (1997).

■ "Upon a motion for JNOV, the moving party . . . admits the truth of all the adverse evidence and all inferences that can be drawn legitimately from it." *Id.* at 496, 943 P.2d at 922. It is not a question of no evidence on the side of the non-moving party, but rather, whether there is substantial evidence upon which a jury could find for the non-moving party. *Quick*, 111 Idaho at 763, 727 P.2d at 1191. This Court will not make a finding of substantial evidence in favor of the non-moving party if it concludes "that there can be but one conclusion as to the verdict that reasonable minds could have reached." *Id.* at 764, 727 P.2d at 1192. In deciding a motion for j.n.o.v. the trial court may not reweigh the evidence or consider the credibility of the witnesses. Instead, it must draw all inferences in favor of the non-moving party. *Lanham*, 130 Idaho at 496, 943 P.2d at 922.

At the close of Olson's case, respondents moved for a directed verdict. Concerning Blackwood's motion, the district court ruled that:

> On the defamation matter, the issue I believe there is malice. I believe there was communication, it was privileged and, of course, the question now is was it made maliciously. And all I would indicate (sic) there is I think if the jury took all the inferences in favor of Plaintiff's case, they could, perhaps, find malice. And I will allow them to do so.

Following the jury's verdict that Olson had proved a cause of action for defamation against Blackwood, Blackwood made a motion for j.n.o.v. In ruling upon that motion, the court held that:

> Now, defamation has to be proven by clear and convincing evidence. Now, as to defamation, the jury has determined that. However, the Court cannot agree with it on the basis of the law, that there was sufficient evidence presented to show actual malice in this termination. In doing that, I'm not deciding who was right in this matter, but I'm just simply deciding what the law requires me to decide. I cannot decide that the evidence, perhaps a preponderance of the evidence would support that claim, but I cannot find clear and convincing, based on everything I've heard, everything I've reviewed, to show actual malice.

On Blackwood's motion for j.n.o.v., the district court was required to determine whether there was substantial and competent evidence to support the jury's conclusion that there was clear and convincing evidence that Blackwood acted with malice. The district court ruled that while there might have been a preponderance of evidence upon which the jury could have found that Blackwood acted with malice, there was not clear and convincing evidence. Thus, we must review the record to determine whether, taking all inferences in favor of Olson, there was substantial and competent evidence to support the jury's conclusion that Olson proved by clear and convincing evidence that Blackwood acted with malice.

■ In determining whether a jury properly found that there is clear and convincing evidence of actual malice in a defamation suit, this Court "must determine whether there is sufficient evidence to support the conclusion that [Blackwood] in fact entertained serious doubts as to the truth of [her] statements or that subjectively [Blackwood] had a high degree of awareness of the probable falsity of the statements. Our focus will be on whether the evidence indicates that [Blackwood] purposely avoided the truth." *Wiemer v. Rankin*, 117 Idaho 566, 576, 790 P.2d 347, 357 (1990).

The difficulty presented by this issue is that Olson has not cited any singular, particular comment made by Blackwood, but rather, ambiguously cites "statements by Blackwood to the EEO office and the Human Resources Office as documented in the record." The record contains three documents which Olson has argued make up the defamatory comments: (1) the notice of termination, (2) the EEO memorandum, and (3) the Corrective Action Plan (CAP). Olson argues that the "most damaging defamatory statements made by Blackwood against Olson were in the notice of termination which alleged poor performance and failure to meet any of the requirements of the CAP as well as unsatisfactory or inadequate skills and unwillingness to improve."

Olson responds to these allegations by arguing that "she documented substantial completion or scheduled for completion all of the items required in the CAP." The CAP noted seven items that Olson was to complete in order to improve her performance. At trial, Olson testified that she had completed, attempted to complete, or had scheduled for completion each of the seven items listed in the CAP. For example, she testified that she was scheduled to begin WordPerfect training the day after she was terminated. Olson testified that she prepared a program plan and presented it to Blackwood but that Blackwood did not consider it sufficient. Additionally, Olson testified that for each of the requirements of the CAP she communicated her progress to Blackwood.

From this testimony, Olson concludes the Blackwood acted with malice because Blackwood knew that Olson was attempting to complete the requirements of the CAP. However, the evidence does not support her conclusion. While Olson testified that she was in the process of completing the CAP requirements, she also testified that she had not completed all of the requirements prior to her termination. She testified that she had not attended WordPerfect training or database training. She also admitted that she had not achieved mastery of the database system.

Therefore, while there is some evidence that Blackwood may have acted with malice, there is also evidence that Blackwood was truthful when she indicated that Olson had failed to comply with the requirements of the CAP and was not willing to improve.

Additionally, we disagree with Olson's claim that the district court was inconsistent when it granted Blackwood's motion for j.n.o.v. after having denied her motion for directed verdict on the defamation claim. At the time of Blackwood's motion for directed verdict, the district court had not heard the evidence presented by both sides. After considering the entire evidence of both sides, the district court was in a better position to determine the merits of each litigant's case. Therefore, we affirm the district court's decision granting Blackwood's motion for j.n.o.v. on Olson's defamation claim.

## B. The District Court Properly Denied Olson's Motion For J.N.O.V. On Her Defamation Claim Against EG&G Idaho.

■ Olson claims that the district court erred in refusing to grant her motion for j.n.o.v. in the face of inconsistent jury verdicts. She claims that EG&G is liable because Blackwood was acting within the scope of her employment when she defamed Olson.

We have determined that the district court did not err in granting Blackwood's motion for j.n.o.v. on Olson's defamation claim. Therefore, the district court did not err in refusing to grant Olson's motion for j.n.o.v. Absent a ruling that Blackwood acted with malice, and thus defamed Olson, there is no basis upon which EG&G could be liable for defamation against Olson.

## C. The District Court Properly Denied Olson's Motion For J.N.O.V. On Her Claim Of Intentional Infliction Of Emotional Distress.

■ Olson argues that she provided the jury with substantial and competent evidence that her emotional distress was severe. She contends that the district court should have granted her motion for j.n.o.v. because respondents did not rebut that evidence.

As stated above, this Court reviews the record to determine whether there is substantial and competent evidence upon which the jury could find that Olson's emotional distress was not severe. *Lanham v. Idaho Power Co.*, 130 Idaho at 495, 943 P.2d at 921.

At trial, Olson's psychiatrist testified that Olson was suffering from post traumatic stress disorder and that the stress had been aggravated by the armed guards. The psychiatrist testified that Olson's depression "markedly decreased her enjoyment of life," and that Olson suffered from "psychiatry agoraphobia, which is a fear of going outside." Additionally, the psychiatrist stated that "At the time of my evaluation, Mrs. Olson would not have been able to work because of the severe anxiety, the uncontrolled panic attacks, her fears, her perfor-

mance anxiety and just the tremendous panic that she had about leaving the house." The psychiatrist concluded that Olson's loss of her employment was, on the severity scale, close to losing a spouse, and was a "very serious stressor, it's in the top four or five."

This testimony, as Olson contends, could have provided the jury with sufficient evidence to determine that Olson's emotional distress was extreme. However, Olson is incorrect in her claim that the evidence was unrefuted.

As pointed out by respondents, this testimony was rebutted by testimony from Olson and from Sherree Schell. Olson testified that she began working for Mary Kay Cosmetics while she was still employed by EG & G and that she continued to sell them after her termination. Schell testified that she talked with Olson at a craft fair about six months after Olson's termination. During their conversation Olson seemed cheerful and generally pleased to see Schell. Finally, Schell agreed that she did not notice any change in Olson's demeanor or behavior between their meeting at the craft fair or when Olson had left EG & G.

Thus, the jury was provided with evidence which it could have relied upon to determine that Olson's emotional distress was not as severe as indicated by Olson's psychiatrist. The district court properly determined that there was substantial and competent evidence to support the jury's determination that Olson had failed to prove that her emotional distress was severe.

## D. The Remainder Of Olson's Issues On Appeal Are Without Merit.

After having carefully considered the rest of Olson's issues on appeal, we find them to be without merit. The decision of the district court is affirmed on all issues relevant to this appeal.

## III.

## CONCLUSION

The district court did not err in granting Blackwood's motion for j.n.o.v. on the issue of defamation. Likewise, the district court correctly granted EG&G's motion for j.n.o.v. on the issue of EG&G's liability for Olson's defamatory comments. The decision of the district court is affirmed. No attorney fees are awarded on appeal. Costs to respondents.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.