61 P.3d 557

Richard V. THOMAS, M.D., Plaintiff–
Counterdefendant–Appellant,

v.

MEDICAL CENTER PHYSICIANS, P.A.,
Richard Aguilar, M.D., Fredric W.
Birkeland, M.D., Gary Botimer, M.D.,
Eugene Brown, M.D., Michael A. Che-
nore, M.D., Michael T. Crane, Elaine
Davidson, M.D., Michael Dee, M.D., Mi-
chael R. Djernes, M.D., James R. Dzur,
M.D., Robert J. Emerson, M.D., Jeffrey
A. Hansen, M.D., Leo S. Harf, M.D.,
Ross S. Higgins, John Hlavinka, M.D.,
Timothy Hodges, D.O., Robert J. Hurst,
Miers C. Johnson, M.D., Harold V. Kunz,
M.D., James E. Loveless, M.D., Sean
Lynn, M.D., Timothy Mc Hugh, M.D.,
David Martin, M.D., Warren N. Miller,
M.D., Randell L. Page, D.O., Joseph L.
Papiez, M.D., Andrea Thompson, M.D.,
Brett Troyer, M.D., Richard C. Troyer,
M.D., Jim Valentine, M.D., Chris Vetsch,
M.D., Michael Widmer, M.D., And Ste-
ven Wynder, M.D., Defendants–Counter-
claimants–Respondents.

No. 26372.

Supreme Court of Idaho,
Boise, November 2001 Term.

Dec. 27, 2002.

Cosho, Humphrey, Greener & Welsh, Boise, for appellant. Thomas G. Walker, Jr. argued.

Anderson, Julian & Hull, Boise, for respondents. Phillip J. Collaer argued.

### SUBSTITUTE OPINION

### THE COURT'S PRIOR OPINION DATED *JUNE 12, 2002* IS HEREBY WITHDRAWN.

SCHROEDER, Justice.

### ON REHEARING

This is an appeal from an award of summary judgment in favor of Medical Center Physicians *et al.* (Medical Center) against Richard V. Thomas, M.D.'s (Thomas) claim for wrongful termination.

### I.

### FACTUAL AND PROCEDURAL HISTORY

On August 30, 1993, Thomas entered into a probationary agreement with Medical Center to be employed as a physician. Subsequently, Thomas and Medical Center entered into an agreement in which Thomas became a shareholder in Medical Center and a partner in Nampa Medical Dental Properties, a partnership created by Medical Center. Prior to signing the 1994 agreement, Thomas believed that he had observed certain instances of misconduct by another doctor in this department (the Doctor) and reported to administrators within Medical Center what he considered to be breaches of the standard of care. He reported that the Doctor had bartered with patients for personal gifts in exchange for medical services, performed unnecessary treatment and testing for the purpose of boosting his income, falsified medical records, and acted unprofessionally by driving his vehicle across Medical Center's lawn.

A Medical Center executive committee considered the complaints and concluded that the allegations of breach of the standard of care by the Doctor were simply differences in medical opinions. The committee concluded, however, that the allegations of bartering had occurred, constituting dishonesty, and the continuation of such would result in the Doctor being dismissed from employment with Medical Center.

Thomas treated one of the Doctor's patients in his absence, telling the patient that he did not agree with the treatment the Doctor had prescribed, and he referred the patient to a local urologist. Thomas did not notify the Doctor upon his return of the treatment he had rendered. After learning of the treatment, the Doctor presented the information to Medical Center's quality assurance committee, which admonished Thom-

as for his actions in a memo dated January 28, 1998, written by Dr. Aguilar (Aguilar). The memo criticized Thomas' conduct, specifically for the entry of information in the patient's chart that was "inflammatory." Thomas responded by telling Aguilar that he was going to report the events concerning the Doctor to individuals or entities outside the Medical Center. Aguilar asked Thomas to let Medical Center handle the situation internally.

On February 17, 1998, Thomas distributed a memo addressed to Medical Center's quality assurance committee, Medical Center's chief administrator, and the chief executive officer and president of Mercy Medical Center. In the memo Thomas defended his conduct, stating that his entries were objective, he was not "in the business of trying to protect 'one of our own' from blatant, illegal actions," and he was morally obligated to report the facts accurately. He also alleged that the Doctor had erred in the treatment of a patient without first administering a pregnancy test, resulting in miscarriage of a viable fifteen-week-old fetus. Thomas concluded the memo, stating that "[i]f these issues are left unaddressed, I guarantee a copy of this letter will also be sent to the Idaho Medical Board."

Following the February 17, 1999 memo, Aguilar informed Thomas that he and many others were very angry with Thomas for writing the memo. On February 23, 1998, less than a week after Thomas' memo was distributed, the Doctor resigned his position at Medical Center. About the same time, Thomas was interviewed by Kenneth Mallea (Mallea), legal counsel for Medical Center. Mallea reported that in his opinion, Thomas would not be satisfied until Drs. Birkland and Lynn, two other physicians at Medical center were no longer employed there.

On February 26, 1998, Birkland signed and dated a document entitled "Consent of Directors," which was a vote in favor of terminating Thomas' employment at Medical Center. On March 3, 1998, written notice of a meeting scheduled for March 5, 1998 to consider Thomas' termination was distributed to some of Medical Center's board of directors. Thomas did not receive written notice of the meeting and, although he was actually aware of the meeting, he decided not to attend upon advice of his counsel. At the meeting all directors who were present, and all of Medical Center's directors except Thomas and Dr. McKinnon, signed the "Consent of Directors" in favor of Thomas' termination. The document stated that every director of Medical Center had consented to adopt Thomas' termination without a formal meeting, in accordance with the provisions of the Idaho Professional Service Corporation Act. Thomas disputes that all members of the board consented, because he, a director at the time, did not sign the document. Medical Center's articles of incorporation contained procedural requirements for termination, requiring an affirmative vote of at least 90% of the board of directors to terminate a director's employment.

On March 7, 1998, Thomas was notified that his employment had been terminated. Thereafter, Medical Center and Thomas entered into agreements in which Medical Center bought out Thomas' stock in the corporation and his partnership interest.

Following his termination, Thomas ran advertisements in local newspapers discussing particular aspects of the dispute. On April 21, 1998, he filed a complaint against Medical Center alleging wrongful termination/retaliatory discharge, breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation, a wage claim, intentional interference with an employment relationship, and interference with a prospective economic advantage. Medical Center answered and counterclaimed against Thomas for breach of contract, unjust enrichment, defamation, libel and slander per se. On October 6, 1999, Thomas filed a motion for leave to amend his complaint to include claims for intentional and negligent infliction of emotional distress and for punitive damages.

Medical Center filed a motion for partial summary judgment to which Thomas responded by filing a motion for summary judgment with respect to Medical Center's counterclaims. Both motions were heard by the district judge on December 21, 1999, and at the conclusion of the hearing the judge granted Medical Center's motion for sum-

mary judgment with respect to most of Thomas' claims. The judge denied Thomas' motion for summary judgment against Medical Center's counterclaims and granted Thomas's motion to amend his complaint for punitive damages, but denied the motion with respect to the addition of the emotional distress claims.

Medical Center filed a second motion for summary judgment regarding Thomas' remaining claims. Following oral argument, the district judge entered a memorandum decision granting Medical Center's motion and dismissing the remainder of Thomas' claims. Judgment was entered on March 20, 2000, and Thomas filed a timely notice of appeal.

## II.

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment. *McDonald v. Paine*, 119 Idaho 725, 727, 810 P.2d 259, 261 (1991); *Meridian Bowling Lanes v. Meridian Athletic Ass'n, Inc.*, 105 Idaho 509, 512, 670 P.2d 1294, 1297 (1983). Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the nonmoving party, demonstrate no material issue of fact such that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c); *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988). In making this determination all allegations of fact in the record and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion. *City of Kellogg v. Mission Mountain Interests Ltd., Co.*, 135 Idaho 239, 243, 16 P.3d 915, 919 (2000). When a jury is to be the finder of fact, summary judgment is not proper if conflicting inferences could be drawn from the record and reasonable people might reach different conclusions. *State Dept. of Fin. v. Res. Serv. Co., Inc.*, 130 Idaho 877, 880, 950 P.2d 249, 252 (1997).

The burden of proving the absence of material facts is upon the moving party. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 868, 452 P.2d 362, 365 (1969). The adverse party, however, may not rest upon the mere allegations or denials of his pleadings, but must respond, by affidavits or as otherwise provided in this rule, setting forth specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e). Therefore, the moving party is entitled to judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial. *Badell*, 115 Idaho at 102, 765 P.2d at 127 (citing *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"The grant or denial of leave to amend after a responsive pleading has been filed is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of that discretion." *Black Canyon Racquetball Club, Inc., v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991).

"[T]his Court exercises free review over the district judge's conclusions of law." *Williamson v. City of McCall*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001).

## III.

### THE DISTRICT JUDGE PROPERLY GRANTED MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT ON SOME ISSUES BUT ERRED IN GRANTING THE MOTION ON THE VIOLATION OF PUBLIC POLICY CLAIM

#### A. Thomas Failed To Preserve Certain Material Issues On Appeal

In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief. I.A.R. 35. "[T]his Court will not review the actions of the district court which have not been specifically assigned as error[,] [e]specially where there are no authorities cited

nor argument contained in the briefs upon the question." *Taylor v. Browning*, 129 Idaho 483, 490, 927 P.2d 873, 880 (1996) (internal quotation omitted). Moreover, this Court will not consider arguments raised for the first time in the appellant's reply brief. *State v. Killinger*, 126 Idaho 737, 740, 890 P.2d 323, 326 (1995).

### 1. Waiver

 Thomas argues that the procedural defects of his termination by Medical Center and the individual directors constituted breach of contract, breach of the duty of good faith and fair dealing, violation of Idaho Code § 30–1–821, interference with an existing contract and intentional interference with a prospective economic advantage. The district judge concluded that Thomas' action in executing the March 10, 1998, purchase agreements and accepting the additional consideration paid waived any technical defects in the termination procedure and ratified the action of the corporation. Under the law of waiver, a party generally cannot accept a benefit from a procedure or action and then claim that the procedure or act is invalid. *Johnson v. Pischke*, 108 Idaho 397, 401, 700 P.2d 19, 23 (1985). The first agreement provided for Thomas' resignation as a shareholder. The second effectuated his withdrawal from the partnership and the sale of his partnership interest. Both agreements stated that Thomas' employment had been terminated, and Thomas received over $23,000 in consideration pursuant to the agreements.

The district judge also found that Thomas waived any procedural irregularities of his termination as a corporate director under Idaho Code §§ 30–1–823 and 30–1–824(4). Regardless of whether this ruling is correct, Thomas has not argued on appeal that the trial court erred in finding that he waived his rights and ratified the termination procedure. Thomas simply argues that the termination procedure was flawed.[1] Even if flawed, if waived and ratified, it is effective. Because not raised on appeal, the district judge's ruling that Thomas waived and rati-

fied the termination procedure that Medical Center used to terminate him is affirmed. *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993).

The district judge ruled that Thomas' breach of contract claim was barred by waiver, and the remainder of Thomas' claims were dismissed on the merits. However, Thomas argues that the procedural irregularities (the same conduct the district judge found he waived) impacted his claims for breach of good faith and fair dealing, interference with an existing contract, and interference with an economic advantage, and Idaho Code § 30–1–821. ' Because these claims are barred by waiver, there was no error in dismissing them as well.

### 2. Employment At–Will

 The district judge ruled that Thomas was an at-will employee. "Unless an employee is hired pursuant 'to a contract which specifies the duration of the employment, or limits the reasons why the employee may be discharged, the employee is 'at-will.' " *Nilsson v. Mapco*, 115 Idaho 18, 22, 764 P.2d 95, 99 (Ct.App.1988). An at-will employee can be terminated for any reason or no reason at all. *Id.* On appeal, however, Thomas did not raise the issue of whether the district judge was correct in determining that he was an at-will employee, and this Court will not consider the issue on appeal. Thomas only uses the term "at-will" in passing in his opening brief, stating that "[i]f this court finds that Thomas is an employee 'at-will,' the tort of intentional interference with a prospective economic advantage is applicable to individual defendants." Thomas does not argue or present authority showing that the district court erred in finding that Thomas was an at-will employee. Thomas does state that he "could only be terminated for reasons that were deemed to be in the 'best interests' of Medical Center ... upon an affirmative vote of ninety percent (90%) of the corporate directors." This argument, however, only goes to the procedural irregu-

---

1. Thomas argues in his reply brief that the agreements only affected Thomas' status as shareholder and as a partner, not as a former employee. This Court, however, will not consider arguments raised for the first time in the appellant's reply brief. *Raudebaugh*, 124 Idaho at 763, 864 P.2d at 601.

larities of the termination, not to whether there were substantive limitations imposed by the "best interests" clause, which would make Thomas an employee other than at-will.

As to the tortious interference claim, it is clearly established that a party cannot tortiously interfere with his own contract. *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.*, 123 Idaho 650, 654, 851 P.2d 946, 950 (1993) (citations omitted). Because Medical Center's actions with respect to Thomas concerned Thomas' employment and arose out of his employment contract, Thomas has not stated a claim for tortious interference with contract.

### B. The District Judge Properly Granted Summary Judgment On The Misrepresentation Claim

The waiver and ratification ruling does not bar Thomas' claim for misrepresentation because it relates to prior statements by Medical Center, not the procedural irregularities of his termination. However, the district judge properly granted summary judgment on the merits of the misrepresentation claim. Actionable misrepresentation requires: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that the representation be acted upon by the hearer; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance that the statement was true; (8) the hearer's right to rely on the truthfulness; and (9) the hearer's proximate injury. *Faw v. Greenwood*, 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980).

Thomas asserts that Medical Center made representations to him that: (1) Medical Center would require its physicians to perform services for its patients at the applicable standard of care; (2) Medical Center would maintain appropriate quality control measures; and (3) Medical Center would enforce the requirements that its physicians meet the applicable standard of care. The district court ruled that the representations made were not actionable because they were: (1) policy statements; and (2) statements of future conduct.

An action for fraud or misrepresentation will not lie for statements of future events. *Mitchell v. Barendregt*, 120 Idaho 837, 843, 820 P.2d 707, 713 (Ct.App.1991) (citing *Sharp v. Idaho Investment Corp.*, 95 Idaho 113, 122, 504 P.2d 386, 395 (1972)). The law requires the plaintiff to form his or her own conclusions regarding the occurrence of future events. *Id.* Thomas was required to prove by clear and convincing evidence that Medical Center had no present intention of following through on the representations he complains of at the time the statements were made in order for the statements to be actionable. Thomas presented no such evidence; therefore, the district judge's dismissal of his misrepresentation claim is affirmed.

Moreover, Thomas had been working for Medical Center and making complaints about the Doctor's conduct for over a year prior to entering into the 1994 employment agreement in which the alleged misrepresentations occurred. The record demonstrates that Thomas was aware that Medical Center was taking no action as a result of his complaints, thus, Thomas has failed to demonstrate reliance on any representations made in the written contracts he signed.

### C. The District Judge Erred In Granting Summary Judgment On The Wrongful Termination/Retaliatory Discharge In Violation Of Public Policy Claim

The determination of what constitutes public policy sufficient to protect an at-will employee from termination for whistle blowing should be considered a question of law. *See generally Quiring v. Quiring*, 130 Idaho 560, 944 P.2d 695 (1997) (determination of what constitutes a violation of public policy in invalidating the terms of a contract is a question of law). The district judge in this case noted that once defined, the issue of whether the conduct in question violates public policy becomes an issue for the jury. The district judge found that Thomas' memo dated February 17, 1998, constituted a conditional threat, as Thomas implied that he would remain silent if Medical Center acceded to his demands. The district judge con-

cluded that such conduct "as a matter of law ... does not constitute conduct protected by the public policy exception to the at-will employment doctrine in Idaho"; thus, Thomas' conduct precluded his ability to claim public policy exception.

On appeal this Court conducts a two-part inquiry. First, the Court asks whether there is a public policy regarding reporting medical irregularities sufficient to create an exception to the employer's right to terminate an at-will employee. Second, the Court decides whether the behavior complained of by Thomas is protected under the public policy exception, and whether a jury could reasonably find that Thomas acted in a manner sufficiently in furtherance of that policy.

### 1. The Conduct Thomas Complained of Falls Under the Public Policy Exception

■■■ In order for the public policy exception to apply, the discharged employee must: (1) refuse to commit an unlawful act; (2) perform an important public obligation; or (3) exercise certain rights or privileges. *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 668, 799 P.2d 70, 74 (1990). The public policy exception has been protected in Idaho on several occasions. *E.g., Watson v. Idaho Falls Consol. Hosps., Inc.*, 111 Idaho 44, 720 P.2d 632 (1986) (protecting participation in union activities); *Ray v. Nampa Sch. Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991) (protecting reports of electrical building code violations); *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981 (1996) (protecting compliance with a court issued subpoena). This Court has also indicated that the public policy exception would be applicable if an employee were discharged, for example for refusing to date her supervisor, for filing a worker's compensation claim, or for serving on jury duty. *Sorensen*, 118 Idaho at 668, 799 P.2d at 74 (citations omitted). In *Sorensen*, the Court stated that if the reported conduct constituted a statutory violation, it would be more likely fall under the protection of the public policy exception to the at-will doctrine. *Id.*

■■■ Thomas asserts that a fellow doctor falsified medical records and performed un-

necessary operations on patients to bolster his income. Thomas asserts that his conduct in reporting the Doctor's actions falls under the exception listed in *Sorensen* for performing an important public obligation. Granting all reasonable inferences to the nonmoving party, this Court must accept that the Doctor's conduct occurred as alleged by Thomas. Reporting such misconduct falls under the public policy exception because the conduct alleged by Thomas is unlawful and it involves the health and welfare of the public. *Crea v. FMC Corp.*, 135 Idaho 175, 178, 16 P.3d 272, 275 (2000). Employees are protected under the public policy exception to the at-will doctrine for reporting the falsification of medical records and the performance of unnecessary operations to bolster a physician's income.

### 2. Thomas' Conduct of Reporting the Violation Falls Within the Exception

■■■ Medical Center argues that Thomas was required to report the conduct to an outside entity in order to be protected under the public policy exception. In *Crea*, the plaintiff sought protection under the public policy exception following termination of his employment by FMC. Crea argued that he was fired because he disclosed to his supervisors documents indicating that activities of FMC had caused serious contamination, including arsenic that threatened ground water. This Court concluded that "Crea's claim for wrongful discharge would fall under the public policy exception to the at-will doctrine if facts supporting the claim were established." *Id.* at 178, 16 P.3d at 275. Thus, an employee who reports wrongful conduct that is protected under the public policy exception is protected by reporting the conduct to superiors within the company.

Even if the Court were to require reporting to an outside entity, the February 17, 1998 memo was addressed to the chief executive officer and president of Mercy Medical Center. Sending the memo to the CEO of a hospital with whom Medical Center worked would satisfy any outside reporting requirement.

Once the court defines the public policy, whether the public policy was violated is a question for the jury. Questions of fact remain as to whether Thomas' conduct in reporting what he considered the Doctor's misconduct, and whether his writing and distribution of the February 17, 1998, memo were in furtherance of the above defined public policy. There are also questions of fact regarding whether Thomas was terminated for acting in the furtherance of the public policy.

### 3. Unclean Hands

▉▉▉▉ Finally, Medical Center presents an "unclean hands" argument with regard to Thomas's claim for wrongful termination in violation of public policy, contending that Thomas was required to report the allegations of misconduct to the Idaho Board of Medicine under Idaho Code § 54–1818, and his failure to do so precludes his claim of discharge in violation of public policy.

Idaho Code § 54–1818 does require physicians to report violations by other physicians, but there is an ambiguity in the statute as to what violations are to be reported. The statute requires physicians to report violations of Idaho Code § 54–1810, but next to where the statute indicates that Idaho Code § 54–1810 is the appropriate provision, there are brackets containing Idaho Code § 54–1814, suggesting that it is the violation of this statute that must be reported. Compiler's notes to I.C. § 54–1818 state that the "bracketed section number ' § 54–1814' was inserted by the compiler since § 54–1810 as it related to grounds for revocation or suspension of licenses was repealed and § 54–1814 now deals with such subject matter."

▉▉▉▉ This Court interprets statutes according to the plain, express meaning of the provision in question and will resort to judicial construction only if the provision is ambiguous, incomplete, absurd, or arguably in conflict with other laws. *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 742, 979 P.2d 605, 615 (1999). This Court disfavors statutory amendment by implication absent clear, unequivocal legislative intent. *Wilkins v. Fireman's Fund American Life Ins. Co.*, 107 Idaho 1006, 695 P.2d 391 (1985). Howev-

er, the evidence indicates that the legislature intended Idaho Code § 54–1818 to refer to Idaho Code § 54–1814. Idaho Code § 54–1818 was passed in 1976 as the reporting statute for malpractice as then defined by Idaho Code § 54–1810. Idaho Code § 54–1818 has not been amended since 1976. However, in 1977, the legislature undertook an extensive rewriting of the Idaho Medical Malpractice Act, repealing, along with many other sections, Idaho Code § 54–1810. In its place, the legislature passed Idaho Code § 54–1814, which is clearly the successor statute of Idaho Code § 54–1810 given their substantially, almost exactly, identical provisions. Also, current Idaho Code § 54–1810 merely demands that all licensed physicians take a written exam to be certified, and does not address what constitutes malpractice. Determining that Idaho Code § 54–1818 still refers to Idaho Code § 54–1810 would frustrate and almost completely nullify the effectiveness of Idaho Code § 54–1818 and the responsibility of the medical field to police itself. The compiler's notes state an accurate correction of the statute. Idaho Code § 54–1818 requires licensed physicians to report the conduct of other licensed physicians that violates the provisions of Idaho Code § 54–1814.

▉▉▉ As for Thomas's failure to report the allegations of misconduct to the Idaho Board of Medicine, the failure of Thomson to report the allegation of misconduct does not constitute a defense for the Medical Center. Under the equitable doctrine of "unclean hands," the Court has the discretion to evaluate the relative conduct of both parties and to determine whether the party seeking equitable relief should in the light of all the circumstances be precluded from such relief. *Curtis v. Becker*, 130 Idaho 378, 941 P.2d 350 (1997). While Thomas had a duty to report to the Medial Board, it is the prerogative of the Medial Board itself to censure such a failure. Thomas's failure to report the alleged misconduct to the Medical Center Board may be evidence of an intent to coerce the Medical Center to acquiesce to his demands, but the failure to meet his responsibilities to the Medical Board is not enough to preclude him from asserting his claim of

discharge against public policy against the Medical Center.

Issues of material fact exist regarding whether Thomas is entitled to relief for discharge in violation of public policy. He has provided sufficient evidence on the disputed issues to survive summary judgment, and the district judge's order is therefore reversed and remanded on this claim.

## IV.

## THE DISTRICT JUDGE ERRED IN DENYING THOMAS' MOTION TO AMEND HIS COMPLAINT TO ADD CLAIMS FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Amendments to complaints in civil cases are governed by I.R.C.P. 15(a). After a responsive pleading has been filed, leave of the court or written consent of the adverse party is required. The Rule provides that "leave shall be freely given when justice so requires."

■■■■ The denial of a plaintiff's motion to amend a complaint to add another cause of action is governed by an abuse of discretion standard of review. *Raedlein v. Boise Cascade Corp.*, 129 Idaho 627, 631, 931 P.2d 621, 625 (1996). The test for determining whether the district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason. *Highland Enter., Inc., v. Barker*, 133 Idaho 330, 343, 986 P.2d 996, 1009 (1999) (citations omitted).

In *Idaho Schools for Equal Education Opportunity v. Idaho State Board of Education*, 128 Idaho 276, 284, 912 P.2d 644, 652 (1996), this Court found that the trial court abused its discretion in denying the plaintiff's motion to amend the complaint without articulating a reason for the denial. In that case, this Court wrote that under Rule 15(a):

[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, "be freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion. . . .

*Id.* (quoting *Clark v. Olsen*, 110 Idaho 323, 326, 715 P.2d 993, 996 (1986)).

■■■■ The dual purposes of Rule 15(a) are to allow claims to be determined on the merits rather than technicalities and to make pleadings serve the limited role of providing notice of the nature of the claim and the facts that are at issue. *Christensen Family Trust v. Christensen*, 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999) (citation omitted). A court may consider whether the allegations sought to be added to the complaint state a valid claim in determining whether to grant leave to amend the complaint. *Black Canyon Racquetball Club, Inc., v. Idaho First Nat'l Bank N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991). A court, however, may not consider the sufficiency of evidence supporting the claim sought to be added in determining leave to amend because that is more properly determined at the summary judgment stage. *Christensen Family Trust*, 133 Idaho at 872, 993 P.2d at 1203.

■■■ Thomas sought to amend his complaint to add claims for intentional infliction of emotional distress and negligent infliction of emotional distress. In denying Thomas leave to amend his complaint, the district judge, regarding Medical Center's conduct that Thomas alleged, wrote: "It doesn't seem to me that any of that reaches anywhere

near the level of outrage that would be necessary to give rise to a separate cause of action for emotional distress." This language indicates that the district judge considered the merits of the emotional distress claims in denying leave to add such claims.

The district judge also wrote, however: "And I can't see that the separate claims of emotional distress and tortious infliction of emotional distress go anyplace. If they're within the reach of contract damages so be it. But there is not a basis to convert what is a contract action into a tort action for emotional distress."

■■ Medical Center contends that the district judge properly denied leave to amend because Thomas was improperly attempting to litigate a contract claim in tort because wrongful discharge sounds in contract, not in tort. *Hummer*, 129 Idaho at 280–81, 923 P.2d at 987–88. In Idaho, plaintiffs may not recover for emotional distress in breach of contract cases, but punitive damages might be appropriate if the defendant's conduct is sufficiently egregious. *Brown v. Fritz*, 108 Idaho 357, 362, 699 P.2d 1371, 1376 (1985).

■■ However, a claim for infliction of emotional distress is not prohibited any time a breach of contract claim is involved. In order for the plaintiff to state a claim for infliction of emotional distress, the conduct complained of must arise independently of the breach of contract claim. *Taylor v. Herbold*, 94 Idaho 133, 138, 483 P.2d 664, 669 (1971). In wrongful discharge cases, claims of infliction of emotional distress are allowed if the facts of the case support such a claim in addition to the contractual claims. *See, e.g., Olson v. EG & G Idaho, Inc.*, 134 Idaho 778, 783–84, 9 P.3d 1244, 1249–50 (2000). In *Olson*, this Court upheld a jury verdict in favor of the defendant employer on an emotional distress claim arising from an employee's termination. *Id.*

Bearing in mind the policy behind Rule 15(a), this Court finds that the district judge acted outside the bounds of discretion in denying Thomas' motion to amend.

## V.

### THE AWARD OF COSTS AND ATTORNEY'S FEES IS VACATED

Because this Court reverses and remands for further proceedings on the termination in violation of public policy and denial of leave to amend the complaint, we vacate the award of costs and fees below, reserving the issue for later determination by the trial court.

## VI.

### NEITHER PARTY IS ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS ON APPEAL

Idaho Code § 12–120(3) provides for mandatory attorney fees on appeal and at trial to the prevailing party in disputes involving contracts for services. The present case involves a dispute relating to an employment relationship, which is inherently contractual in nature. In addition, most of Thomas' claims sounded in contract. However, because we remand for further proceedings, neither party is the prevailing party and the issue of fees is remanded for consideration at the conclusion of the case.

## VII.

### CONCLUSION

The district judge's order of summary judgment on the claim for wrongful discharge in violation of public policy is reversed and remanded for further proceedings. The case is also remanded to allow Thomas to amend his complaint to add claims for intentional and negligent infliction of emotional distress. The award of costs and attorney fees is vacated and remanded for consideration at the conclusion of the case. No attorney fees are awarded on appeal. The appellant is awarded costs.

Chief Justice TROUT, Justices WALTERS and KIDWELL, and Justice Pro Tem MELANSON concur.