96 P.3d 623

The ESTATE OF Charles R. BECKER, Charles R. Becker, and The Estate of Winifred A. Becker, Plaintiffs–Appellants,

v.

Kimmer W. CALLAHAN, Callahan & Prohaska, Chtd., an Idaho corporation, Callahan & Associates, Chtd., an Idaho corporation, Defendants–Respondents,

and

Does 1–10, Defendants.

No. 29516.

Supreme Court of Idaho, Boise, April 2004 Term.

July 28, 2004.

**524**

John Patrick Whelan, Coeur d'Alene, argued for appellants.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for respondents. Peter C. Erbland argued.

BURDICK, Justice.

Charles R. Becker (Becker) appeals from the district court's grant of summary judgment in favor of defendants, Kimmer W. Callahan and Callahan & Prohaska, Chtd. (Callahan). Callahan prepared and executed the last will and testament of Winifred Becker, Charles Becker's wife. Mr. Becker sued Callahan for negligence, professional negligence, and intentional infliction of emotional distress. The district court granted summary judgment in favor of Callahan and denied requests to amend the complaint from

which Mr. Becker now appeals. We affirm the orders of the district court.

## I. FACTS AND PROCEDURE

Winifred and Charles Becker were married and had one daughter, Charliann. Ms. Becker and her sister, Mary Etta Williams (Williams), inherited property from their parents located in Bonner County, Idaho. The sisters inherited as joint tenants an 83–acre parcel located outside of Sandpoint, Idaho, and a home located in town. Ms. Becker also inherited as her separate property a 20–acre parcel. The Becker family lived in a home on this 20–acre parcel.

On May 18, 1999, Callahan was contacted by Ms. Becker's sister, Williams, and instructed to prepare a will for Ms. Becker. Ms. Becker had been suffering from cancer. On May 21, 1999, Callahan wrote directly to Ms. Becker and confirmed that he had a conversation with her sister, Williams, and that he understood that Ms. Becker was hiring him to prepare a will on her behalf. He quoted his retainer and informed her that he would be contacting her to set up an appointment to review and sign the documents.

On May 26, 1999, Callahan met with Williams and Mr. Becker in his office. Ms. Becker was too ill to attend the meeting. At the meeting, Callahan reviewed the will with both Williams and Mr. Becker. Callahan agreed to go to the Beckers' home so that Ms. Becker could execute the will. No one raised any concerns about the estate plan.

On June 2, 1999, Callahan went to the Beckers' home with the prepared will. Callahan met with Ms. Becker for the first time. She was very ill and near death. Callahan asked her, "Who do you want the farm to go to?" Ms. Becker did not respond to his question. Williams then asked one or two times and Ms. Becker replied, "Charliann." Charliann is the Becker's daughter. During this line of questioning two witnesses, Stratton and Doris Kernodle, were present. At some point Callahan suggested that he come back at another time, but Mr. Becker told Callahan that he better get her to do it now, while she still can. Ms. Becker was present-

ed with the will and with Williams' assistance Ms. Becker placed an "X" on the signature line. The witnesses also signed the will. Callahan left the home and upon returning to his office prepared an affidavit detailing the event.

Winifred Becker died two days later on June 4, 1999. The will named Mr. Becker personal representative of the estate and Williams as an alternate. Under the will, Mr. Becker received an interest similar to a life estate and the remaining interest would go to their daughter, Charliann.

On June 10, 1999, Callahan sent a letter to Becker expressing his condolences and offering a free consultation concerning the estate. On July 28, 1999, Callahan met with Williams and Becker to initiate probate proceedings. On August 2, 1999, the will was admitted for probate proceedings. Eventually, Williams replaced Becker as personal representative. Becker suffered from a nervous breakdown. Becker's stepbrother became his guardian ad litem.

On March 13, 2001, the parties agreed to set aside the will and distribute the assets according to the terms of their settlement agreement. The agreement was reduced to writing and signed by the court on August 22, 2001.

Becker filed a complaint on June 1, 2001, seeking damages from Callahan upon two causes of action: negligence and intentional infliction of emotional distress. On December 20, 2002, the court heard the parties' arguments upon Callahan's motion for summary judgment and partially granted summary judgment as to the negligence and legal malpractice claims. On January 28, 2003, the court heard Callahan's renewed motion for summary judgment, as well as Becker's motion to amend the complaint. The court granted summary judgment upon the remaining cause of action, intentional infliction of emotional distress, and denied Becker's motion to amend. Becker now appeals.

### III. STANDARD OF REVIEW

■ In an appeal from an order of summary judgment, this Court's standard of re-

view is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Purdy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 445, 65 P.3d 184, 186 (2003). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.* "The existence of a duty is a question of law over which this Court exercises free review." *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999).

### IV. ANALYSIS

Mr. Becker sued Callahan for negligence, professional negligence, and intentional infliction of emotional distress. The district court granted summary judgment in favor of Callahan and denied requests to amend the complaint from which Mr. Becker now appeals. We affirm the orders of the district court.

### 1. Negligence

■ Mr. Becker alleges both attorney malpractice, i.e., professional negligence, and general negligence in Callahan's preparation and execution of Ms. Becker's will. The district court granted Callahan's motion for summary judgment finding that, as to professional negligence, there was no attorney-client relationship between Callahan and Mr. Becker nor with the estate of Mr. Becker. With regard to Mr. Becker's claim of general negligence or any duty beyond the attorney-client relationship, the district court found that there was no such general duty in law and no such duty owed to Mr. Becker by Callahan. We affirm the district court's grant of summary judgment.

■ The elements of negligence are well established: (1) duty; (2) breach; (3) causa-

tion; and (4) damages. *McPheters v. Maile,* 138 Idaho 391, 395, 64 P.3d 317, 321 (2003). To establish a claim for attorney malpractice/professional negligence, the plaintiff must show: (1) the creation of an attorney-client relationship; (2) the existence of a duty on the part of the lawyer; (3) the breach of the duty or the standard of care by the lawyer; and (4) that the failure to perform the duty was a proximate cause of the damages suffered by the client. *McColm–Traska v. Baker,* 139 Idaho 948, 88 P.3d 767, 770 (2004)(citing *Jordan v. Beeks,* 135 Idaho 586, 590, 21 P.3d 908, 912 (2001); *Marias v. Marano,* 120 Idaho 11, 13, 813 P.2d 350, 352 (1991); *Johnson v. Jones,* 103 Idaho 702, 652 P.2d 650 (1982)).

Mr. Becker urges the extension of a duty to a surviving spouse by the attorney who drafted the deceased spouse's will. We have recently ruled upon the issue of whether a direct attorney-client relationship is required to exist in order for the intended beneficiary of testamentary instruments to sue the attorney who drafted the instruments for malpractice. *Harrigfeld v. Hancock,* 140 Idaho 134, 90 P.3d 884, 886 (2004). In that case we addressed the issue of whether, or in what circumstances, a person who was not a client of the defendant attorney could have a malpractice claim against the attorney. *Id.,* 140 Idaho at 136–37, 90 P.3d at 886–87. This Court held:

> A direct attorney-client relationship is required to exist between the plaintiff and the attorney-defendant in a legal malpractice action except in this very narrow circumstance. An attorney preparing testamentary instruments owes a duty to the beneficiaries named or identified therein to prepare such instruments, and if requested by the testator to have them properly executed, so as to effectuate the testator's intent as expressed in the testamentary instruments. If, as a proximate result of the attorney's professional negligence, the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized, the attorney would be liable to the beneficiary harmed even though the attorney did not have a direct attorney-client relationship with that beneficiary. *Id.,* 140 Idaho at 139, 90 P.3d at 889. "The attorney has no duty to insure that persons who would normally be the objects of the testator's affection are included as beneficiaries in the testamentary instruments ... The attorney likewise has no duty to see that the testator distributes his or her property among the named beneficiaries in any particular manner." *Id.,* 140 Idaho at 138, 90 P.3d at 888. This Court further stated that an attorney could not be held liable to beneficiaries for the preparation and execution of documents that revoke or amend testamentary instruments based upon the beneficiaries' claim that the testator would not have intended to revoke the testamentary instruments. *Id.,* 140 Idaho at 139, 90 P.3d at 889.

In the present case, that of suing an attorney regarding his drafting of a will, Mr. Becker has no independent cause of action for negligence outside that of professional negligence. Here Callahan's duty was with his client, Ms. Becker. That duty is not extended to non-clients except in the narrow circumstance described above in *Harrigfeld.* Callahan had absolutely no duty to Mr. Becker with regard to what share, if any, he received from his wife's estate, except to properly draft and execute the testamentary instrument(s) so as to effectuate the testator's intent as expressed in the testamentary instruments. Callahan prepared Ms. Becker's will according to the instructions relayed to him on her behalf by Williams. He reviewed the document with Williams and with Mr. Becker. He confirmed with Ms. Becker that she wanted her property to go to her daughter Charliann prior to Ms. Becker signing the will, in the presence of Mr. Becker, Williams, and the witnesses. He fulfilled any duty to the beneficiaries in giving effect to Ms. Becker's intent as expressed in the will. He owed no further duty to Mr. Becker.

Mr. Becker claims that the "Will" involved in this case was a significant cause of his nervous breakdown, damaged his relationship with his daughter, and caused him to incur significant legal fees. Whether or not this is actually true is irrelevant regarding the question of whether Mr. Becker has a

valid cause of action for professional negligence, or malpractice, against Callahan in this case. A duty must first exist between Callahan and Mr. Becker in order for Mr. Becker to recover. We find that no such duty exists beyond that which we recently set forth in *Harrigfeld v. Hancock,* and affirm the district court's grant of summary judgment.

## 2. Intentional Infliction of Emotional Distress

■ Mr. Becker appeals the district court's grant of summary judgment in favor of Callahan as to the claim of intentional infliction of emotional distress. The district court found that no reasonable trier of fact could find that Callahan acted with intentional or reckless conduct, or that Callahan's actions were extreme and/or outrageous. We affirm the district court's grant of summary judgment.

■ "In Idaho, four elements are necessary to establish a claim of intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Edmondson v. Shearer Lumber Products,* 139 Idaho 172, 179, 75 P.3d 733, 740 (2003)(citing *Curtis v. Firth,* 123 Idaho 598, 601, 850 P.2d 749, 751 (1993)). "Although a plaintiff may in fact have suffered extreme emotional distress ... no damages are awarded in the absence of extreme and outrageous conduct by a defendant." *Edmondson,* 139 Idaho at 179, 75 P.3d at 740 (quoting *Brown v. Fritz,* 108 Idaho 357, 362, 699 P.2d 1371, 1376 (1985)). "Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." *Edmondson,* 139 Idaho at 180, 75 P.3d at 741. "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.' " *Id.* (quoting *Ford v. Revlon, Inc.* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987)).

Here, even if Callahan's conduct may not have been the most appropriate way to draft and execute the will, nothing in his conduct rises to the level of "atrocious," or "beyond all possible bounds of decency." The facts of this case lack the extreme and outrageous conduct necessary to sustain a cause of action for intentional infliction of emotional distress, and therefore we affirm summary judgment.

## 3. Motion to Amend

■ Mr. Becker moved the district for leave to amend his complaint to add additional causes of action for general negligence and professional negligence in Callahan's capacity as representing the estate of Ms. Becker and Mr. Becker's status as personal representative, a cause of action for negligent infliction of emotional distress, a cause of action for interference with prospective economic advantage, and a claim for punitive damages. The district court denied Becker's motions. We affirm.

■ After a responsive pleading has been filed a party may amend a pleading only by leave of court or by written consent of the other party. I.R.C.P. 15(a). "[L]eave shall be freely given when justice so requires." *Id.* "The denial of a plaintiff's motion to amend a complaint to add another cause of action is governed by an abuse of discretion standard of review." *Thomas v. Medical Center Physicians, P.A.,* 138 Idaho 200, 210, 61 P.3d 557, 567 (2002). The test for determining whether the district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason. *Id.*

■ A court may consider whether the allegations sought to be added to the complaint state a valid claim in determining whether to grant leave to amend the complaint. *Id.* (citing *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank N.A.,* 119 Idaho 171, 175, 804 P.2d 900, 904 (1991)).

A court, however, may not consider the sufficiency of evidence supporting the claim sought to be added in determining leave to amend because that is more properly determined at the summary judgment stage. *Thomas,* 138 Idaho at 210, 61 P.3d at 567. (citing *Christensen Family Trust v. Christensen,* 133 Idaho 866, 872, 993 P.2d 1197, 1203 (1999)).

Here the district court stated,

Certainly Rule 15(a) allows amendment of pleadings by leave of the court. And I recognize that that rule vests an amendment of the pleadings, granting as such, in the sound discretion of the court, and the court recognizes that clearly it is matter of discretion. I also recognize that the court should favor liberal grants to amend.

The court also recognizes that a motion to amend can be denied if the proposed pleading does not set forth a valid claim
. . .

The district court went on to address the validity of each of the causes of action from the proposed amended complaint, concluding none of them to be valid and that it would not be appropriate to allow an amendment of the complaint.

The district court clearly perceived the issue of whether to grant the motion for leave to amend the complaint as one of discretion because it specifically stated as much and it recognized that such motions are to be liberally granted under I.R.C.P. 15(a). See, *Iron Eagle Development, LLC v. Quality Design Systems, Inc.,* 138 Idaho 487, 492–93, 65 P.3d 509, 514–15 (2003). The district court acted within the bounds of its discretion and consistently with the applicable legal standards because it recognized it could consider whether the proposed new claims were valid claims. See, *Id.* The district court addressed on the record exactly why each of the proposed causes of action from the amended complaint were not valid. The district court reached its decision by an exercise of reason. We agree with the district court's analysis. Therefore, the district court properly denied Becker's motion to amend.

As to the addition of a claim for punitive damages, since we have upheld the district court's grant of summary judgment as well as the court's denial of Becker's motion to amend the complaint to include additional causes of action, we need not address the issue of punitive damages as it is moot.

## V. CONCLUSION

Callahan owed no duty to Becker, as an heir of his wife's estate, except to properly prepare and execute her testamentary document(s) according to the testator's intent as expressed in the testamentary document(s). Callahan fulfilled this duty to Becker and owed him no further duty that would support a claim of negligence or legal malpractice. Additionally, the facts of this case lack the extreme and outrageous conduct necessary to sustain a cause of action for intentional infliction of emotional distress. Consequently, we affirm the district court's grant of summary judgment. We also uphold the district court's denial of Becker's motion to amend. Costs to respondents.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.