122 P.3d 300

**SPUR PRODUCTS CORPORATION, an Idaho corporation, Eagle Data Works, Inc., an Idaho corporation; and Talon Enterprises, Inc., an Idaho corporation, Plaintiffs–Appellants,**

v.

**STOEL RIVES LLP, Defendant–Respondent.**

No. 30433.

Supreme Court of Idaho,
Boise, February 2005 Term.

Sept. 30, 2005.

Ellis, Brown & Sheils, Chartered, Boise and Strother Law Office, Boise for appellants. Jeffrey A. Strother argued.

Holland & Hart, LLP, Boise, for respondent. Amanda K. Brailsford argued.

SCHROEDER, Chief Justice.

This is an action brought by Spur Products Corp., Eagle Dataworks, Inc. and Talon Enterprises, Inc. (collectively Spur) against Stoel Rives, LLP (Stoel) for alleged improper conduct during Stoel's representation of Spur. The parties filed cross-motions for summary judgment. The district court denied Spur's motion and granted summary judgment for Stoel. Spur appealed.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Stoel represented Spur in a dispute against IKON Office Solutions, Inc. (IKON). Spur sued IKON for alleged breach of an agreement to exclusively distribute and market its products and for misappropriation of proprietary, confidential and trade secret information. On August 24, 1999, Stoel and Spur entered into a Letter Agreement which was intended to memorialize an oral agreement made between Stoel and Spur in early August 1999 regarding outstanding debts that Spur owed Stoel, primarily fees and costs incurred during the course of Stoel's representation of Spur in the IKON dispute. The essence of the Letter Agreement was that Stoel would withdraw from representing

Spur unless Spur accepted a settlement from IKON and paid all outstanding debts, by the completion of the IKON dispute mediation conference. Spur owed Stoel approximately $243,600.

Prior to offering the Letter Agreement, counsel for Spur in the IKON dispute consulted with Peter Jarvis (Jarvis), a Portland-based Stoel attorney, regarding Stoel's ethical obligations and potential withdrawal as counsel from the IKON dispute. Jarvis sent out two intra-firm memoranda related to Spur's failure to pay its outstanding legal debts and Stoel's potential withdrawal. The first was dated August 3, 1999, and the second, August 24, 1999. The memoranda were circulated to Stoel's Professional Response Practice Group. Brent Giauque (Giauque) was among the committee members to whom Jarvis sent the memoranda. Giauque was a Stoel attorney in the firm's Salt Lake City office, who at one time had represented IKON's wholly-owned subsidiary BCS Integration, Inc. (BCS). Giauque had previously signed an affidavit that he would not have any involvement with the Spur/IKON dispute as part of Stoel's traditional conflicts screening process. Both Spur and IKON were aware of Giauque's potential conflict and consented to Stoel's representation in the IKON dispute on the condition no confidential information would be passed to either party. Stoel did not inform Spur of the communication sent to Giauque prior to offering the Letter Agreement.

Stoel represented Spur during mediation, and on August 26, 1999, Spur accepted IKON's $3,500,000 settlement offer. Nearly eighteen months later, Spur Products Corp. filed suit against Stoel to recover damages for alleged improper conduct by Stoel in its representation of Spur. Spur Products Corp. alleged two negligence claims and requested an amount in excess of $6,300,000 in damages. Eagle Dataworks, Inc. and Talon Enterprises, Inc. subsequently filed identical complaints that were consolidated with Spur Products Corp.'s initial complaint.

In or around April 2001 Spur sought to have Jarvis deposed. Stoel objected on the basis that Jarvis' testimony was privileged as attorney-client communications. Stoel persisted in this objection until November 2002 when it agreed to allow Jarvis to be deposed. Jarvis was deposed on February 4, 2003. Two weeks prior to his deposition Stoel sent copies of Jarvis' two August memoranda to Spur. Subsequent to receiving these documents and taking Jarvis' deposition, Spur filed a second motion to amend its complaint, alleging additional claims for negligence on the basis that Jarvis had revealed confidential client information, namely, Spur's settlement posture to Giauque and had failed to inform Spur of this breach. The district court denied Spur's second motion to amend its complaint.

The district court denied Spur's motion for partial summary judgment and granted Stoel's cross-motion for summary judgment. Spur appeals, arguing that it was error to deny its motion to file a second amended complaint and to grant Stoel's motion for summary judgment.

## II.

### STANDARD OF REVIEW

"The denial of a plaintiff's motion to amend a complaint to add another cause of action is governed by an abuse of discretion standard of review." *Estate of Becker v. Callahan*, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004) (quoting *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 210, 61 P.3d 557, 567 (2002)). In reviewing an exercise of discretion, this Court must consider: "(1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason." *Id.*

Review by the Supreme Court of an entry of summary judgment is the same as that required by the district court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). A district court determines a motion for summary judgment based on whether there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c)(2004); *id.* In determining whether there are genuine issues of material fact the court reviews all evidence in the light most favorable to the non-moving party. *Id.* (citations omitted). If the evidence shows no disputed issues of material fact, what remains is a question of law over which the appellate court exercises free review. *Id.* (citation omitted).

## III.

## THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT DENIED SPUR'S MOTION TO FILE A SECOND AMENDED COMPLAINT

The district court denied Spur's motion on the grounds that there was insufficient evidence to support the additional claim, the added claim would change the focus of the lawsuit, and Stoel would suffer undue prejudice in the amendment.

I.R.C.P. 15(a) provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend a pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires, and the court may make such order for the payment of costs as it deems proper.* A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten (10) days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

I.R.C.P. 15(a)(2004)(emphasis added).

■ In considering whether to grant a motion for leave to amend, a trial court may consider whether the amended pleading sets out a valid claim, whether the opposing party would be prejudiced by any undue delay, or whether the opposing party has an available defense to the newly added claim. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.,* 119 Idaho 171, 175, 804 P.2d 900, 904 (1991) (citation omitted). The court may not, however, weigh the sufficiency of the evidence related to the additional claim. *Becker,* 140 Idaho at 528, 96 P.3d at 628; *Thomas v. Med. Ctr. Physicians, P.A.,* 138 Idaho 200, 210, 61 P.3d 557, 567 (2002); *Carl H. Christensen Family Trust v. Christensen,* 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999) (court may not consider the sufficiency of evidence in determining whether to allow a party to amend because that is more properly an issue for summary judgment state). Timeliness of a motion for leave to amend is not decisive, but it "is important in view of ... factors such as undue delay, bad faith, and prejudice to the opponent." *Christensen,* 133 Idaho at 871, 993 P.2d at 1202 (citation omitted).

■ Spur sought to amend its complaint to include a claim for negligence based on Stoel's alleged breach of confidentiality in disclosing Spur's settlement posture to Giauque prior to mediation and prior to offering the Letter Agreement. *Becker* addressed the elements necessary to assert a claim for attorney malpractice or attorney negligence. A plaintiff must show:

(1) the creation of an attorney-client relationship; (2) the existence of a duty on the part of the lawyer; (3) the breach of the duty or the standard of care by the lawyer; and (4) that the failure to perform the duty was a proximate cause of the damages suffered by the client.

*Becker,* 140 Idaho at 526, 96 P.3d at 627. Spur alleged that the parties maintained an attorney-client relationship; Stoel had a duty to maintain all attorney-client communications as confidential; Jarvis delivered a copy of Spur's Letter Agreement to Giauque, a Stoel attorney who was representing a wholly owned subsidiary of IKON; Stoel did not disclose this communication to Spur; and, as a proximate result of this negligent action Spur was deprived of its opportunity to enter into arbitration and thereby incurred damages. In support of its motion Spur submitted copies of Giauque's affidavit, Jarvis' cir-

culated memoranda, and the testimony of Dennis Hicks, Spur's President, indicating he would not have agreed to the Letter Agreement had he known of Stoel's inadvertent disclosures. Spur adequately alleged each of the elements necessary to assert a claim of attorney malpractice. The only grounds on which the district court could properly deny Spur's motion were undue delay or the availability of a defense to Spur's new negligence claim.

 The district court stated "the Court finds there is insufficient evidence to support the addition of this count." The district court weighed the sufficiency of the evidence. Under the standard established in *Becker* and *Thomas* this was improper. In its order on Spur's motion for reconsideration the district court asserted that it had taken into account the prejudice to Stoel that would result from Spur's added negligence claim and that it "would have the effect of changing the focus of [a] lawsuit that ha[d] been actively litigated for over two years." Undue delay and prejudice are proper standards on which to deny a motion to amend. However, Stoel significantly contributed to Spur's delay in moving to amend the complaint.

 From approximately November 2001 to January 2003 Stoel refused to disclose internal memoranda regarding the sums Spur owed Stoel, including the two Jarvis memoranda circulated to Giauque. It was not until Spur deposed one of its former attorneys in August of 2002 that it became aware they had consulted with Jarvis prior to offering the Letter Agreement. Spur immediately sought to depose Jarvis, and his deposition was scheduled for February 4, 2003. Two weeks prior to this deposition, Stoel released to Spur copies of the August memoranda Jarvis circulated to Giauque. Following this production and the Jarvis deposition, Spur filed its second motion to amend. Stoel's claim of unjust prejudice by Spur's delay in filing its motion to amend the complaint falls short. It was Stoel's persistent objections to production of Jarvis' internal memoranda that contributed substantially to the delay. The district court erred in finding otherwise.

Stoel relied on the defense below that the Letter Agreement waived any liability related to its representation in the IKON dispute. However, this waiver may now be unenforceable if it was entered into without informed consent. This issue must be determined on remand.

Stoel also contends that Spur failed to adequately allege causation and harm because it failed to allege facts demonstrating Giauque received, read and communicated the information contained in Jarvis' memoranda to IKON. However, this is not essential to the claim presented by Spur's amended complaint. According to Spur, Stoel's failure to disclose the Jarvis communications to Giauque caused Spur to accept mediation as its final remedy and relinquish its right to arbitration, thereby causing Spur damages. Spur adequately alleged a viable claim for attorney malpractice. The motion to amend the complaint must be granted by the district court.

## IV.

## THE COURT WILL NOT DETERMINE OTHER ISSUES ON APPEAL IN LIGHT OF THE RULING ON THE MOTION TO AMEND

The district court granted summary judgment on the record then before it. Those are interlocutory rulings which were proper on the record as it existed but which may be re-examined by the district court in light of this Court's ruling on the motion to amend and discovery which may take place as a consequence of that ruling. The Court expresses no opinion on those rulings at this time.

## V.

## CONCLUSION

The district court's decision to deny Spur's second motion to amend its complaint is reversed. The case is remanded to the district court for further proceedings consistent with this opinion. Spur is awarded costs. Any award of attorney fees to either party is deferred until resolution of the case

in district court. When a prevailing party is finally determined, the district court may consider the award of attorney fees for the proceedings before it and this appeal.

Justices TROUT, EISMANN and BURDICK concur.

Justice Pro Tem McKEE dissenting.

I respectfully dissent. The remand in this case accomplishes little more than grading the trial judge's papers on an issue that was properly within his discretion. Although the district judge did comment upon the insufficiency of the evidence in testing plaintiff's motion to amend—a technical prohibition under the guidelines established by this court—the plain fact is that the proposed amendment fails to constitute a claim for relief under the pleadings as framed or under any construction of the facts or the law offered to support the pleadings, making the amendment an act of futility. Since the majority sidestepped all of the summary judgment issues raised in this appeal, the remand becomes a needless loop back through the district court.

Nothing alleged in the proposed amendment constitutes a breach of duty on the part of any lawyer from Stoel Rives or demonstrates any damage on account thereof. There is no general duty of confidentiality to keep information from being exchanged among lawyers *in the same firm*, nor any general duty that requires one to seek the client's permission before exchanging information with others *from the same firm*. There is no allegation in the proposed amendment of any special duty on the part of anyone, no facts offered to give rise to any special duty, and no reason to infer or imply such. There is no allegation that any lawyer revealed any information outside the firm, which is all that any duty of confidentiality addresses in any case. In any event, there is no sufficient allegation of causation or resultant damage to the plaintiffs.

All that is alleged in the proposed amendment is that one lawyer (Jarvis) from the Stoel law firm disclosed information pertaining to the plaintiff's case to another lawyer (Giauque) in the same firm. There is no allegation or even suggestion in the proposed amended complaint, in any of the briefing submitted to the district judge or to this court, or in any of the supporting affidavits or other discovery materials submitted to the district court or to this court, that *anyone* from the defendant law firm disclosed *anything* pertaining to plaintiff's case to anyone *outside the firm*. In my opinion, it is not a breach of duty for one lawyer in a firm to disclose confidential information to another lawyer *in the same firm*.

The majority infers that because Giauque, the lawyer to whom Jarvis addressed the offending memorandum, at one time represented a subsidiary of the plaintiff's adversary, this created some sort of special duty on the part of the Stoel firm generally, requiring the firm to seek plaintiff's consent before allowing any lawyer in the firm to reveal any sensitive information to Giauque. As a matter of general law, and on every construction of the proposed pleadings, briefing and affidavits submitted in this case, this is plainly not so.

It is a frequent occurrence that lawyers in a firm will have some past connection with the present adversary of a current client. As long as the past connection is disclosed to the current client—as was done in this case—and so long as there is no present or ongoing conflict in the representation of dual interests—and none such was indicated in this case—there is no ethical prohibition to such circumstance, nor need there be. With respect to the current client, no ongoing protection is needed. All lawyers of the firm are under an absolute ethical duty to keep any information pertaining to the current client confidential. Any breach of this duty can certainly be the basis of a malpractice claim. But the gravamen of the breach of confidentially is the unwarranted disclosure of confidential information to someone *outside* the firm. There is no breach of duty where information about a current client's case is shared with other lawyers in the firm—or, for that matter, with secretaries, paralegal assistants, or administrative personnel within the firm—*so long as the information remains in the firm*.

The ethical and practical concern that exists in this circumstance involves the prior client, not the current client, because the lawyer who had the involvement with the prior client may well have obtained privileged information during the time of the prior connection. No lawyer can ethically use any previously obtained confidential information of a prior client in connection with the representation of a current client. If this circumstance faces the trial lawyer actually representing the current client, there is usually no alternative but for the lawyer to withdraw. One cannot be expected to disregard information actually possessed in memory, and the lawyer would be unable to continue under such circumstances. If the previous representation involves another lawyer in the same firm, it may be possible to wall-off the other lawyer from the lawyers handling the new client's matter, and prevent any information that lawyer may have about the prior client from tainting the present lawyers' efforts to represent the current client. This effort is sometimes referred to as a "Chinese Wall" agreement, wherein the prior lawyer agrees that he or she will have no involvement with the case. It is essential to recognize that these "Wall" arrangements are intended to protect the prior client—who may need protection from inadvertent disclosure. The "Wall" agreements are usually one-way streets, in that they are intended to protect the old client, not the new, for the very good reason that the new client needs no additional protection.

Giauque provided a "Chinese Wall" affidavit to IKON to the effect that he would take no part in the litigation efforts by Spur and its related companies against IKON. The purpose of this affidavit was to assure the prior client—IKON in this case—that information Giauque might have obtained while acting as counsel for the subsidiary of IKON would not be used or inadvertently disclosed to the trial team now representing Spur in the current litigation. Giauque's affidavit is a one-way street. He promised not to stick his nose into the new case, but there is no promise, nor any necessity of a promise, to shield Giauque from information flowing the other way. As noted above, there does not

need to be any promise or shield because Giauque is absolutely bound by the firm's obligations of confidentiality to the new client.

The bald allegation that sending information to Giauque breached some sort of duty to keep Giauque in the dark is insufficient in view of the fact that, as a matter of law, no such duty exists. There is no allegation in the proposed amended complaint of any special duty, by agreement or otherwise, and, as the trial court correctly observed, there is nothing in the record to indicate any circumstance where some special duty could be inferred or construed to arise in this case.

Stoel Rives is a very large, multi-state firm with offices in many cities. Jarvis heads the firm's professional responsibility group and is an expert on legal ethics. He is based in Portland. Giauque is based in Salt Lake City. The litigation team was centered in the firm's Boise office. Jarvis had no connection with the ongoing litigation. There is no evidenced or allegation that Jarvis knew or had any reason to know of Giauque's "Chinese Wall" agreement. There is no evidence or allegation that Jarvis sent the memo to Giauque in an effort to help IKON. There is no evidence or allegation that anyone from the litigation team knew or had any reason to know that Jarvis was going to send the material to Giauque. There is no evidence or allegation that Giauque actually received the memo, or if he received it that he read it. Finally, there is no evidence or allegation that he, or anyone else, communicated any of the information contained in the memo to anyone outside the firm, let alone to anyone within IKON.

The majority has been led astray by loose pleading. The charging allegation of the proposed amendment alleges first that Giauque "was a partner/attorney with Stoel" and that he "rendered legal services to IKON." In affidavits and briefing, it appears that Giauque rendered service to a subsidiary of IKON, a different entity not involved in the current litigation. In the next allegation, plaintiff's charge that the offending memo had been inadvertently revealed to "IKON's attorney." It is clear from the

affidavits and briefing that Giauque was, at one time, an attorney for the subsidiary of IKON, but not for IKON itself. There is no indication that this subsidiary had any connection with Spur or its related companies or with the activities giving rise to the current litigation. There is no allegation or indication that Giauque had any connection whatsoever with the litigation representation of IKON. Clearly, from all the evidence in the record, he was not "IKON's attorney." Finally, the proposed amended complaint alleges that the plaintiffs proceeded into mediation "oblivious to the aforementioned disclosure to IKON." There is no indication anywhere in the record, and no allegation or suggestion in any of the materials submitted to the trial court or this court that anyone from the Stoel firm disclosed anything to IKON.

The problem is that the proposed amendment, in three short, conclusory paragraphs jumps from Giauque having represented IKON at one time, to Giauque being IKON's current attorney in the litigation, to Giauque being IKON. The jumps are not supported elsewhere in the complaint, in the briefs, in any of the affidavits submitted in connection with the motion, or in any of the discovery material submitted either to the trial court or this court.

Finally, and in any event, there is no sufficient allegation of damage. The only allegation of damage is a paragraph to the effect that because Spur was not informed that Giauque had received the offending information from Jarvis, Spur and its affiliates proceeded with the mediation and were deprived of their right to arbitration. This statement of causation is logically flawed if examined in isolation, and factually unsupported if examined in light of the record. When examined in isolation, it is an example of the logical fallacy *post hoc ergo propter hoc* (after this and therefore because of it), and is insufficient unless the necessary linkage is alleged or is obvious.

The only indication in the record to support the allegation of damage and causation is a statement in an affidavit by the CEO of Spur, wherein he contends that had he known of the disclosure to Giauque, he would not have accepted the letter agreement but would have insisted on arbitration. But this recital merely restates the logical fallacy. His simple statement that one event followed another, without more, does not supply the necessary linkage and is not sufficient to support the conclusion that the latter was "caused" by the former and therefore resulted in damage. Even in notice pleading, the allegations and inference from Hicks' affidavit are insufficient to provide the necessary linkage as a matter of law.

The missing link in the logical premise, of course, is a connection between the disclosure of information and a detrimental result at mediation. There must be some allegation that Spur received less at the mediation than it would have received at arbitration *because of the disclosure of information to Giauque.* There is no allegation or showing in this case, either in the faulty pleadings offered to the court or in any of the materials submitted in support of the motion, either to the trial court or to this court on appeal. There is no linkage in the proposed pleading, and the omission is fatal.

There is no suggestion anywhere in the record that anyone at Stoel did anything in connection with any of the events surrounding the letter agreement to deprive Spur of its *right* to arbitration. To the contrary, the letter agreement expressly refers to the circumstances whereby Spur could continue to arbitration after the mediation. Stoel merely stated that if it was not paid its fees by the conclusion of the mediation, the law firm would not continue to represent Spur through the arbitration. The fact is that Stoel did represent Spur at the mediation, and Spur did settle. There is no indication that Spur objected to the settlement amount, or that it was forced upon it by Stoel. All of the materials submitted to the trial court and to this court in the briefing and affidavits indicated that Spur voluntarily accepted the settlement, voluntarily executed all of the required releases, and voluntarily dismissed its claims against IKON. The majority's conclusion that the allegation of causation and damage in the complaint is sufficient is logically flawed, legally insufficient, and contrary to the demonstrated facts of the case.

I understand the majority's concern that the trial court should not weigh the evidence when considering a motion to amend. How-

ever, the clear law is that the decision to allow an amendment to the complaint, especially late in the proceedings, rests in the sound discretion of the trial court. Although the trial court should liberally grant amendments, the trial court need not do so when such would be a futile act.[1] So here. Where the proposed pleadings are as vague and indirect as in the instant case, and where even a cursory examination of the briefing and other materials submitted to the trial court reveals that there is nothing to support the inferences or implications suggested by the proposed amendment, either in the claimed cause of action or in the allegation of damages sustained, and where the facts recited make clear that there is no cause of action to state, the trial judge was correct in his ruling and his decision should be affirmed.

The majority's insistence on a needless and expensive loop back through the trial court merely to require the trial judge to consider these issues upon a separate motion brought under different rules in order to articulate a technically correct basis for the ruling is to exalt form over substance to an unreasonable degree.

1. *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 126 Idaho 1002, (1995); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank*, 804 P.2d 900, 119 Idaho 171, (1991).