# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44037-2016

ETHAN ALLEN WINDOM,            )
                               )          **Boise, June 2017 Term**
    Petitioner-Appellant,    )
                               )          **2017 Opinion No. 83**
v.                             )
                               )          **Filed: July 10, 2017**
STATE OF IDAHO,                )
                               )          **Karel A. Lehrman, Clerk**
    Respondent.              )
                               )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. Hon. Cheri C. Copsey, District Judge.

The judgment of the district court is <u>vacated</u>, and this case is <u>remanded</u>.

Andrew H. Parnes, Ketchum, argued for appellant.

Jessica M. Lorello, Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Ada County from a judgment dismissing a petition for post-conviction relief after the district court denied a motion to amend the petition to raise a claim that petitioner, who had been sentenced to life without parole for murdering his mother when he was a juvenile, was entitled to be resentenced pursuant to the United States Supreme Court's decision in *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016). The district court denied the motion to amend on the ground that *Montgomery* did not apply to the petitioner because he had not been sentenced to a mandatory fixed-life sentence and because, if *Montgomery* did apply, the sentence would be upheld. We vacate the judgment of dismissal, hold that the sentencing was not in conformity with the requirements of *Montgomery*, reverse the order denying the petitioner's motion to amend, and remand this case for further proceedings.

## I.
## Factual Background.

On January 24, 2007, sixteen-year-old Ethan Windom brutally murdered his mother by repeatedly striking her head with a club that he had fashioned by attaching weights to one end of a dumbbell. After his arms tired from the weight, he then stabbed her dead body repeatedly in the throat, chest, and abdomen and finally thrust a knife into her exposed brain. He pled guilty to murder in the second degree, and the district court sentenced him to a determinate life sentence. This Court affirmed that sentence on appeal. *State v. Windom*, 150 Idaho 873, 253 P.3d 310 (2011).

On June 25, 2012, the United States Supreme Court issued its opinion in *Miller v. Alabama*, 567 U.S. 460 (2012), which addressed whether state laws that required a mandatory fixed life sentence for juveniles convicted of murder violated the Eighth Amendment. The Court held that they did, but it also stated that

> a sentencer misses too much if he treats every child as an adult. To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. . . . And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id.* at 477–78.

> The Court concluded by stating:

> But given all we have said in *Roper, Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

*Id.* at 479–80.

2

On July 3, 2012, an attorney who did not represent Windom sent him a letter at the correctional institution in which he was housed. The attorney wrote:

> You may have heard that the United States Supreme Court recently decided that mandatory fixed-life sentences for juveniles are unconstitutional. You do not have a mandatory fixed life sentence. But, it is possible that Judge Copsey did not consider all the factors that the Supreme Court says courts should consider before she imposed your discretionary fixed life sentence.
>
> Therefore, you may want to challenge your sentence in court. I have enclosed a form to fill out if you want to file a federal habeas corpus petition. You need to file that petition in the federal court in Boise no later than September 19, 2012. You also might be able to file a state post-conviction petition, but the deadline for that might have been June 21, 2012. So you might be too late if you haven't filed a state post-conviction petition already. Finally, you might be able to file a Rule 35 motion to correct an illegal sentence. I suggest you write to your trial attorney, Ed Odessey, to see if he thinks that is advisable.
>
> I spoke to Justin Curtis today and he said that he would be writing you too.
>
> I do not know if any of these court challenges will end up helping you. I write only out of a concern that you may have let one opportunity slip by and would hate to see you lose any chance to challenge your sentence, should you want to do so.
>
> Please feel free to write or call if you have any questions or concerns. My office accepts collect calls.

On September 12, 2012, Windom filed a petition for habeas corpus in federal district court, alleging that his sentence violated the Eighth Amendment. The court dismissed the petition on August 13, 2014, and Windom appealed to the Ninth Circuit Court of Appeals.

On August 18, 2015, Windom filed in the State district court a petition for post-conviction relief in which he alleged ineffective assistance of trial and appellate counsel. The petition was filed by Lori A. Nakaoka, who is to be commended because she has represented him throughout this case pro bono. On August 26, 2015, the district court gave notice of its intent to dismiss the petition on the ground that it was untimely under Idaho Code section 19-4902(a) because it was not filed within one year of the determination of the direct appeal. In response, Windom filed a brief in which he presented argument as to why his petition should not be dismissed based upon the doctrine of equitable tolling.

On November 3, 2015, the State filed an answer, a motion for summary disposition, and a supporting brief. The State argued that the petition was barred by the statute of limitations and that equitable tolling did not apply. On January 11, 2016, the district court heard oral argument

on the State's motion for summary disposition, and it took the matter under advisement to issue a written decision.

On January 25, 2016, the United States Supreme Court issued its opinion in *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016), and it revised that opinion on January 27, 2016. In *Montgomery*, the Court held that *Miller* was retroactive to juvenile offenders whose convictions and sentences were final when *Miller* was decided. On January 26, 2016, Windom filed a motion to amend his petition to include a claim that his fixed-life sentence violated *Miller*. The State responded by filing a brief in which it argued that *Montgomery* could not cure the problem that the petition was untimely. On February 22, 2016, the district court heard oral argument on Windom's motion to file an amended complaint. It took that motion under advisement and stated it would issue a written decision.

On February 23, 2016, the district court filed its decision on Windom's motion to amend his petition and on the State's motion for summary disposition. The court denied Windom's motion to amend on the ground that "*Montgomery* did not change the holding announced in *Miller* and, thus, does not apply to Windom's case or change the fact this Petition is untimely." The court granted the State's motion on the grounds that Windom's petition was untimely and that, even if *Montgomery* applied to Windom, the sentencing transcript shows that the court "in fact applied the heightened standards and factors identified in *Montgomery* and previously in *Miller*." The court entered a judgment dismissing Windom's petition with prejudice, and Windom timely appealed.

On June 22, 2016, the Ninth Circuit Court of Appeals vacated the federal district court order dismissing Windom's petition for habeas corpus. The court remanded the petition to the federal district court with instructions to stay the federal habeas petition until this Court's decision on his petition for post-conviction relief.

## II.

**Did the District Court Err in Denying Windom's Motion to Amend His Complaint?**

Windom pled guilty to the charge of murder in the second degree. All of Windom's claims in his petition for post-conviction relief were based upon the alleged ineffective assistance of counsel during his sentencing and the appeal of his sentence. The basis of the district court's

4

order conditionally dismissing Windom's petition was that the petition was barred by the statute of limitations, as was the State's motion for summary disposition.

On January 26, 2016, Windom filed a motion to amend his petition to add a claim pursuant to *Montgomery* and *Miller*. The district court denied the motion on the grounds that *Miller* and *Montgomery* do not apply to Windom because he did not receive a *mandatory* fixed-life sentence, so the proposed amendment would be futile. The court also held that if *Montgomery* announced new standards for sentencing a juvenile to life without parole, the transcript of the sentencing hearing shows that the court "in fact applied the heightened standards and factors identified in *Montgomery* and previously in *Miller*." The court therefore held that "amendment would be futile. Windom's Petition is untimely."

"An application for post-conviction relief is in the nature of a civil proceeding, entirely distinct from the underlying criminal action. The Idaho Rules of Civil Procedure generally apply." *Ferrier v. State*, 135 Idaho 797, 798–99, 25 P.3d 110, 111–12 (2001) (citation omitted). "The denial of a plaintiff's motion to amend a complaint to add another cause of action is governed by an abuse of discretion standard of review." *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 210, 61 P.3d 557, 567 (2002). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed*, 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002). "A court may consider whether the allegations sought to be added to the complaint state a valid claim in determining whether to grant leave to amend the complaint." *Estate of Becker v. Callahan*, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004).

Idaho Code section 19-4902(a) provides that a petition for post-conviction relief "may be filed at any time within one (1) year from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later." The one-year period begins to run when the appellate court issues a remittitur. *Hauschulz v. State*, 144 Idaho 834, 837, 172 P.3d 1109, 1112 (2007). This Court upheld Windom's sentence on direct appeal, and that determination became final on June 21, 2011, when this Court issued the remittitur. The one-year period within which Windom could file a petition for post-conviction relief expired on June 21, 2012. Four days later, the United States Supreme Court issued its decision in *Miller*.

5

The district court held that the "actual holding" in *Miller* and *Montgomery* was that mandatory fixed-life sentences for juveniles were unconstitutional and that those decisions did not apply to Windom because he was not subject to a mandatory fixed-life sentence. Although the issue in *Miller* was the constitutionality of a mandatory fixed-life sentence for juveniles who commit murder, the basis of the decision was that a fixed-life sentence precluded the sentencing court from considering age-related characteristics and other factors before imposing the sentence. The Court concluded by stating, "Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, *we require* it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." 567 U.S. at 480 (emphasis added) (footnote omitted). Thus, *Miller* mandated that a sentencing court take certain factors regarding a juvenile murderer into account before sentencing the juvenile to a fixed-life sentence. However, as mentioned above, *Miller* was issued four days after the deadline for Windom to file a petition for post-conviction relief, even assuming that the decision would apply to a juvenile whose sentence had become final over a year earlier. There was nothing in the *Miller* decision that indicated it would be applied retroactively.

Idaho law does not preclude the granting of relief pursuant to a petition for post-conviction relief that was filed beyond the one-year deadline. Because there may be claims that are not known to the defendant within that time limit, we have held that there must be a reasonable time beyond that deadline within which claims can be asserted once they are known. *Charboneau v. State*, 144 Idaho 900, 904–05, 174 P.3d 870, 874–75 (2007). A petition raising any such claims "must be filed within a reasonable time after the petitioner has notice of the issue(s) raised." *Charboneau v. State*, ___ Idaho ___, ___, 395 P.3d 379, 389 (2017).

On January 25, 2016, the United States Supreme Court issued its decision in *Montgomery*. It stated that the issue was "whether its [*Miller*'s] holding is retroactive to juvenile offenders whose convictions and sentences were final when *Miller* was decided." *Montgomery*, ___ U.S. at ___, 136 S.Ct. at 725. With respect to the *Miller* decision, the Court in *Montgomery* stated that "*Miller* held that mandatory life without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id*. at 726 (internal quotation marks omitted). However, the Court also stated:

> *Miller* required that sentencing courts consider a child's "diminished culpability and heightened capacity for change" before condemning him or her to die in prison. Although *Miller* did not foreclose a sentencer's ability to impose life

6

without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect "'irreparable corruption.'"

*Id*. (internal citation omitted).

The *Montgomery* Court held that *Miller* announced a new substantive rule of constitutional law. In addressing that issue, the Court did not limit the new rule to a prohibition on mandatory fixed-life sentences for juveniles. Rather, the Court reiterated the factors that must be considered by the sentencing court before imposing a discretionary fixed-life sentence on a juvenile offender. The Court stated at length:

> *Miller* took as its starting premise the principle established in *Roper* and *Graham* that "children are constitutionally different from adults for purposes of sentencing." These differences result from children's "diminished culpability and greater prospects for reform," and are apparent in three primary ways:
>
>> "First, children have a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking. Second, children 'are more vulnerable to negative influences and outside pressures,' including from their family and peers; they have limited 'control over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievable depravity.'"
>
> As a corollary to a child's lesser culpability, *Miller* recognized that "the distinctive attributes of youth diminish the penological justifications" for imposing life without parole on juvenile offenders. Because retribution "relates to an offender's blameworthiness, the case for retribution is not as strong with a minor as with an adult." The deterrence rationale likewise does not suffice, since "the same characteristics that render juveniles less culpable than adults—their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment." The need for incapacitation is lessened, too, because ordinary adolescent development diminishes the likelihood that a juvenile offender "'forever will be a danger to society.'" Rehabilitation is not a satisfactory rationale, either. Rehabilitation cannot justify the sentence, as life without parole "forswears altogether the rehabilitative ideal."
>
> These considerations underlay the Court's holding in *Miller* that mandatory life-without-parole sentences for children "pos[e] too great a risk of disproportionate punishment." *Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." The Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of

7

"children's diminished culpability and heightened capacity for change," *Miller* made clear that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."

    *Miller*, then, did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects "'unfortunate yet transient immaturity.'" Because *Miller* determined that sentencing a child to life without parole is excessive for all but "'the rare juvenile offender whose crime reflects irreparable corruption,'" it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, *Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive because it "'necessarily carr[ies] a significant risk that a defendant'"—here, the vast majority of juvenile offenders—"'faces a punishment that the law cannot impose upon him.'"

*Id*. at ___, 136 S.Ct. at 733–34 (citations omitted). The Court held that "*Miller* announced a substantive rule that is retroactive in cases on collateral review." *Id*. at ___, 136 S.Ct. at 732.

Although it is possible that the Court intended *Miller* to be applied retroactively only to those juveniles who were given mandatory sentences of life without parole, that reading would be inconsistent with the last paragraph quoted above. The Court stated that *Miller* "rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'— that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, *Miller* announced a substantive rule of constitutional law." *Id*. at ___, 136 S.Ct. at 734. Thus, it appears that *Montgomery* declared that *Miller* was retroactive not only for those juveniles sentenced to a mandatory of life without parole, but also for those for whom the sentencing court imposed a fixed-life sentence without considering the distinctive attributes of youth. As we held in *Johnson v. State*, No. 42857, 2017 WL 1967808 (Idaho May 12, 2017), regarding a post-conviction petition filed by a petitioner who had been sentenced to life without parole for the murder of her parents while she was a juvenile, *id*. at *1, "*Montgomery* also made it clear that '*Miller* requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence,'" *id*. at *11.

Windom did not have a claim under *Miller* until *Montgomery* was issued, and the day after it was issued he filed his motion to amend his petition to include a claim under *Miller* and

*Montgomery*. In *Johnson v. State*, No. 42857, 2017 WL 1967808 (Idaho May 12, 2017), the petitioner had been sentenced to life without parole for the murder of her parents while she was a juvenile. *Id*. at *1. She filed a petition for post-conviction relief based upon *Miller* and *Montgomery*, and the trial court ruled that she could have brought an Eighth Amendment claim in her direct appeal or in her first petition for post-conviction relief and therefore her claim under *Miller* was barred by Idaho Code section 19-4901(b) as being untimely. *Id*. at *10. We held that the trial court erred, stating, "While it's true Johnson could have made *an* Eighth Amendment claim that her sentence was generally excessive or cruel or unusual, she could not have made the claim that her sentence was *illegal* under *Miller*'s holding interpreting the Eighth Amendment until after *Miller* was decided." *Id*.

Windom would not have had a claim under *Miller* until *Montgomery* was decided, which made *Miller* "retroactive to juvenile offenders whose convictions and sentences were final when *Miller* was decided." *Montgomery*, ___ U.S. at ___, 136 S.Ct. at 725. Therefore, his motion to amend his petition to include a claim under *Miller* and *Montgomery*, made one day after the *Montgomery* decision was issued, was timely.

The district court also held that the transcript of the sentencing hearing showed that the court complied with the requirements of *Miller* and *Montgomery*. The transcript does not show that any evidence was presented regarding the distinctive attributes of youth mentioned by the Supreme Court in *Miller* and *Montgomery*. When commencing its explanation of the sentence it was going to hand down, the court stated: "I have considered the nature of the offense. I have considered the mental health issues. I have considered mitigating and aggravating factors. I have considered in mitigation, for example, the relative youth. I have considered the fact that he does not have a long criminal record."

Although the district court stated that it considered Windom's "relative youth" as a mitigating factor, "*Miller . . . did more than require a sentencer to consider a juvenile offender's youth* before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" *Id*. at ___, 136 S.Ct. at 734 (emphasis added). Before imposing sentence, the district court discussed at length Windom's statements to classmates that he hated his mother; the brutal nature of the murder; his apparent lack of remorse when questioned by police; his fascination with serial killers; his diagnosis as a paranoid schizophrenic; and the need, if he is released into society, that he be

9

treated by a competent mental health professional, that he take his medications, and that they actually work. However, the sentencing hearing did not show that evidence was presented regarding the factors required by *Miller*. Those factors must be individualized for the juvenile being sentenced. *Miller*, 567 U.S. at 465, 477.

In holding that it complied with the requirements of *Miller* and *Montgomery*, the district court wrote, "Based on the horrific facts of the murder itself, the past behaviors, and Windom's own statements and actions in the interviews, the Court concluded, after careful deliberation, that Windom's actions did not reflect 'the transient immaturity of youth' but in the words of the United States Supreme Court, reflected those actions of 'the rarest of children' whose crime reflected 'irreparable corruption' deserving life without parole." The quotes in this sentence did not appear in the court's comments at the sentencing hearing, obviously because the hearing predated the Supreme Court's opinions in *Miller* and *Montgomery*, nor did the court point to any statements it made that have the equivalent meaning. In making this statement, the court was apparently holding retrospectively that it did not believe that Windom's actions reflected "the transient immaturity of youth" and instead were the actions of "the rarest of children" whose crime reflected "irreparable corruption."

A retrospective analysis does not comply with *Miller* and *Montgomery* where the evidence of the required characteristics and factors was not presented during the sentencing hearing. "*Miller*'s holding has a procedural component. *Miller* requires a sentencer to consider a juvenile offender's youth and attendant characteristics *before* determining that life without parole is a proportionate sentence." *Montgomery*, ___ U.S. at ___, 136 S.Ct. at 734 (emphasis added).

> A hearing where 'youth *and its attendant characteristics*' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. The hearing does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.

*Id*. at ___, 136 S.Ct. at 735 (emphasis added). It is the lack of such evidence at *Windom*'s sentencing hearing that distinguishes this case from *Johnson v. State*. In *Johnson*, we upheld a juvenile's pre-*Miller* sentence of life without parole for the murder of her parents because evidence later required by *Miller* had been admitted during the sentencing hearing and considered by the trial court before it imposed a sentence of fixed life. In *Johnson*, "Drs. Craig

10

Beaver and Richard Worst testified at the sentencing hearing about the developmental state of an adolescent's brain compared to an adult and how youth are more prone to impulsivity and more likely to be able to be rehabilitated." *Johnson v. State*, 2017 WL 1967808, at *11. "Dr. Beaver's testimony was approximately forty pages. Dr. Worst's testimony was approximately sixty-eight pages." *Id*. at n.9. Therefore, we held:

> Although *Miller* and *Montgomery* had not been decided at the time of the sentencing hearing, and therefore the terms of "irreparably corrupt" and "transient immaturity" where not in the court's lexicon at that time, the court clearly considered Johnson's youth and all its attendant characteristics and determined, in light of the heinous nature of the crime, that Johnson, despite her youth, deserved life without parole.

*Id*. at *11.

Thus, the district court erred in denying Windom's motion to amend his petition. The denial of the motion was not consistent with applicable legal standards because Windom's motion to amend was filed within a reasonable time after the issuance of the *Montgomery* decision, which made *Miller* applicable to Windom's sentence of life without parole. The sentencing hearing in Windom's case did not include evidence of the factors required by *Miller* and *Montgomery*, and therefore his sentencing did not comport with the requirements of those decisions.

### III.

### Conclusion.

We vacate the judgment dismissing Windom's petition for post-conviction relief, reverse the order denying his motion to amend, and remand this case for further proceedings that are consistent with this opinion.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**